21-10996 United States of America v. Jonathan Dean Davis Mr. Ternan. Good morning. This case haunts me. The injustice I saw my client experience and my inability to do anything about it has caused me to lose faith in our lot of issues in this case. My client has lost a year and a half of his life because the district court did not do his job and you will lose the rest of it if you all do not do yours. My client was charged with seven counts of wire fraud. The wire transmissions happened in 2016 and 2017. Government did not call a spoke to or interacted with Jonathan Davis in 2016 or 2017. Did not call a teacher, staff member, an employer of graduates. Did not call a student that spoke to my client. Did not call a regulator that spoke to my client. Not any testimony or any evidence of any kind in 2016 or 2017 or for that matter 2015 about my client's intentions, goals, what he was trying to achieve. Wire fraud is a specific intent to crime. Specific intent to defraud. Government had to show that the purpose of those wires in 2016 and 2017 was to defraud for the purpose of executing the scheme to defraud. There's no evidence of any kind of what my client was trying to achieve. There's no evidence that he was trying to defraud anyone. Wait a minute, what about the journal? The journal is in 2013 and 2014. So the government is asking you all and the jury to infer from statements made in 2013 and 2014 what his intent is in 2016 and 2017. Well it was consistent with what he said in the journal. His actions. What actions? Were you his lawyer then? There's no evidence at all of any actions. Were you his lawyer just on appeal or were you law adviser? I was his lawyer in the trial court. I was there. I watched it happen, right? There's no evidence. So the journal in 2014, right? I think there's evidence that he lied in 2014, right? But the school is re-approved without any lies in 2015, 2016, 2017, right? So how can you say that in 2016 he has the intent to defraud anyone based on what he said in his journal in 2014, right? I'm sure that everybody in this room told a lie two or three years ago. Can you infer from that that you're trying to defraud someone today? Well I take it you're making a point about the sufficiency of the evidence here? Yes. Okay. And so in your view the jury would not have been acting rationally to infer from the journal an intent to defraud. Correct. In 2016 or 2017. And there's also nothing that they can infer from that the purpose of the wires in 2016 or 2017 was for the purpose of executing a scheme to defraud. The indictment says that on or about the dates of the wires my client did something to cause those wires. There's no evidence of my client having any involvement in the wires at all. The wires were sent by the VA. They were certified by a different employee. My client didn't even know these students were there, right? So the allegations in the indictment weren't proved. On the money laundering, same sort of problem, right? He bought a house and he bought some cars with profits from his business. There's nothing wrong with buying cars or a house with the profits of your business. That's why people run businesses. They have profits. In order for it to be a crime, he has to know that the money he's using are proceeds of some other crime. There's no evidence at all that my client thought that any crimes were being committed, that there was any money that was the proceeds of the crime in 2016. Are you representing to us that he did not misrepresent his funding and the lies that he told? Are you just ignoring that? No. I'm saying that happened in 2014. So what? That's how he got the business, was through his lies. That's incorrect. So how can you say now that, oh, it didn't matter a few years later that he lied a few years before? I don't get it. Because he was approved in 2015 without any lies, right? So if he was spending money that he earned in 2014, maybe there's an argument that he would have known that it was proceeds of a crime, right? But if he's operating a lawful business in 2015, 2016, and 2017, how could you just assume that he thought that the money was somehow proceeds of a crime? What's your authority to support this theory that the lies from 13, 14, 15, from getting approval were cured by later approvals in out years, 15, 16, 17? What's your case or cases? I don't know. There's no authority for the proposition that there's a cure because this is essentially the first type of case that I've seen that's anything like this, right? Where the government is trying to argue that something that happened in one year somehow taints things that happened years later when they're not. There are lots of cases like that, right? I mean, if you hatch this scheme to do this and then you carry it out in the out years, it doesn't suddenly become legal because you follow all the rules later. What evidence is there that he had any scheme at all in 2015, 2016, or 2017? Didn't he lie to get the approval, the initial certifications from the, what is it, the Veterans Commission? So in the application, the Texas Workforce Commission, he did not disclose that he had a pending criminal charge and that charge was dismissed by the time the later applications happened. And he submitted a financial statement that wasn't accurate, right? The later applications also have financial statements that were accurate. The Texas Veterans Commission, the government argues that somehow he misrepresented compliance with the two-year rule. That's their argument. But he had been training people from 2005 all the way through. He applied to the Texas Veterans Commission in 2011 and they said come back to me. But he wasn't applying. The entities were applying. I mean, in other words, they were distinct entities. That's how he got the two years was to add them up effectively in his mind, right? But he never disclosed any of that from the get-go. There's no testimony from anyone that the legal entity makes any difference for purposes of the two-year rule, right? No one said that. So it travels with an individual. There is a, in the rule, in the CFR, there is a change of control provision that has a test for what happens if there's a change of control. I'm not even sure that if the same individual owns it and it changes it from one legal entity to another, that constitutes change of control. But no one testified that the requirements for that, if there was a change of control, weren't met. Right? I mean, the— What's your authority for that, that it travels with him as an individual as opposed to the separate entities? It's not my—no one testified that it doesn't follow him. No one testified that what the Texas Veterans Commission told him to do, come back in 2013, that that was wrong, right? The Texas Veterans Commission audited what he had done and said that it met the two-year requirements. So there's no authority on point here, right? Because there's no—there wasn't any evidence presented, right? They didn't put up somebody from the VA that would say, if you change corporations, then your two-year clock starts over. In fact, when I asked Patrick Drogwowski about it, he said, yeah, companies are bought and sold. They change ownership, right? That doesn't start your two-year clock over again, right? It can if you, you know, change your city or you, you know, fire all your faculty and hire entirely new faculty. There are things in the rule that can cause the two-year clock to start over when you change control. But none of that happened here. There was no change in faculty. There was no change in the courses, changing the companies. And more importantly, no evidence was presented, right? There was nothing the jury could infer from that the two-year rule was violated because they weren't presented with an expert that testified about how any of this stuff applies. They didn't have anything that they could—the judge didn't include in the instructions anything about how the two-year rule works. They're just guessing as laypeople, based on the same sort of facts you all are presented with, that somehow something bad happened here because the government said so. But there's no actual evidence from anybody that the two-year rule was violated. I want you to address the issues you want to, but I hope that before your time runs out, you'll address the issue of the correct subsection to—on the forfeiture point. What is the correct definition of proceeds? Because I take it from your argument that that could make quite a dramatic difference in the amount of proceeds that are forfeited. Absolutely, Your Honor. So as the Court has noted, 981A2 has two different definitions of proceeds for purposes of forfeiture. The first one essentially is a gross proceeds. The second one is a net proceeds. Obviously, the school did operate. It did teach thousands of students and graduates, and there were costs associated with doing that. And what the district court did was essentially say, any penny that ever came into this school, you have to forfeit that, including the money that your school returned to the VA because those students didn't actually arrive. In other words, he had to forfeit all $72 million. Yes, $72 million that the school had come in the door, even though he never actually personally received $72 million. It came to the school. And the vast majority of that money was spent on educating the students that were there, the direct costs of the services provided. Was evidence – is there evidence in the record with respect to what are the direct costs? Yes. So Mr. Roy Cook, who was the CFO of the company, submitted a declaration about the direct costs, and the government put him on the stand on that issue as well. Roy Cook. The district court never even reached that issue or tried to calculate anything about the direct costs because he concluded that the first definition of proceeds applied. I take it your argument is subsection 2B applies because these were lawful services that were at least, the jury found, sold or provided in an illegal manner. That's my belief of what section applies, right? Because the time that he was receiving these payments, no misrepresentations were being made by him or anybody else, right? The theory is that somehow the application was improper originally and therefore all the other applications don't matter. But the actual services that he was being paid for were lawful, right? There's nothing improper about teaching students how to run an HVAC machine. The government wants to instead interpret, I think, unlawful activities in 2A to apply here. What is your best case? I know you've cited a number of out-of-circuit cases. What case would you direct us to about the interpretation of that? You know, I'm not sure which case is the best. I mean, they're all roughly the same point, that if you can't interpret every unlawful action as being an unlawful activity because if you did that, then everything in B-2 would. I cited one that applied that. It would wipe 2B out of the statute. Yeah, yeah. So I don't know if any of them are better than the others. They're all basically the same. That's all right. You cite them in your brief.  So if you're correct about the judge applying the wrong legal definition of proceeds, is there enough in the record to establish what the costs actually were? Or do we need to send it back? I think you would need to remand it. I mean, you could try to figure it out, but I would think the district court should be put in a position to figure that out. And it would be a judge issue, not a jury issue. Correct. That's a judge issue. Same issue applies in many respects on the sentencing. The court determined that there was a loss and that he intended to cause a loss of $72 million. And he didn't base that on any intent, as this court recognized it. In United States v. Nelson, this court said the mere fact that you wanted to make money and you had an intention to make money is not sufficient to prove a specific amount that you were trying to get, and therefore a specific amount of a loss for purposes of sentencing. Okay. So you're saying if we were to find that there was an error with respect to the definition of proceeds, that should also influence the argument with respect to the sentencing? It's a different legal standard, right? But the sentencing guidelines talk about a credit needing to be applied for services rendered, right? So that, and this court has recognized that in United States v. Harris and Klein and other places, that you can't take the full amount of money that comes in through the door. You can't look at the defendant's gain. You look at the victim's loss, and you have to look at what the victim actually received. You can't just take the full amount of the gross payment. And the district court ignored that for purposes of sentencing too, right? So it sentenced him based on a $72 million loss as an intended loss, no credit for services rendered, no evidence of intent, and in our view, no evidence of loss at all. The VA already had an obligation to pay these benefits, right? If I owe someone $1,000 and I pay that $1,000, I haven't suffered a loss, right? The VA, if it had paid some other school for these services instead of our school, would have been in the exact same position it is now. And so the loss calculation by the district court is flawed in many respects, and I lay that out in the brief. The restitution, same problem. It's essentially a windfall of the VA. They've discharged their obligation to the veterans, but now they're going to get paid, you know, by my client, this restitution, so they end up paying. Thank you, Mr. Ternan. You will have five minutes for rebuttal. Mr. Bradshaw. Good morning. Thank you, Judge Duncan. Good morning. Please support Jonathan Bradshaw for the United States. I'd like to start this morning by talking about the sufficiency on the wire fraud and the money laundering counts. In particular, I want to focus on that two-year rule because I think it's going to be informative when we talk about loss amount, and I also want to answer the court's questions on forfeiture and which subsection applies. Turning first to the sufficiency on the wire fraud, this court's deferential standard of review is well established in its case law. The court's review here is highly deferential to the verdict below. All reasonable inferences are drawn in favor of the verdict, and the court will set the verdict aside only if no reasonable juror could find the evidence sufficient. Here, the evidence was overwhelming. Let's start first with the wire fraud and the scheme to defraud. The scheme to defraud was essentially several lies told to multiple governing agencies that allowed this entire school to get off the ground. As the court, I think Judge Wilson's questions indicated, you're familiar with how the process works. First, you have to get approval from the Texas Workforce Commission. Then you take that to the Texas Veterans Commission, and you have to satisfy their two-year rule. All of those applications then go to the VA for ultimate approval. There were several lies to the Texas Workforce Commission. I don't want to rank them, but a big one was the false set of financials that were provided from the accountant, Andy Plagens. In Davis's journal, he says, I finally found an accountant who will do the audit the way that I need it to be done. This is a certified audit. And what he tells Andy Plagens is retail ready was formed in May of 2013, and it has no operations for the entire year of 2013. So Andy Plagens does a very simple audit. The audit says you have no activities in this company, no operations. Now what Davis lied about was that there were four bank accounts, some of which were overdrawn. Andy had an employee who he could not pay. And Andy Plagens testified, had I known about those operations for retail ready, it would have absolutely changed my audit. And then the second lie to the Texas Workforce Commission was the failure to disclose the arrest for bouncing a $49,000 check. Then we moved to the Texas Veterans Commission. And there Davis says that he satisfies the two-year rule. That's the first step in this application. And Judge Wilson, you asked a good question. Does the two-year rule sort of travel with the person or does it travel with the school? And Mr. Ternan said that the jury heard no evidence on that point. That's not true at all. I want to direct the court to record 7045. That's Mr. Davis's application to the Texas Veterans Commission. The checkbox on that rule, I certified the school below has operated as an educational institution for the last two years. The school below. Retail Ready Career Center, the six-week boot camp school, did not operate continuously for the previous two years. That school did not even have a building. It didn't have a classroom. It wasn't hosting students. We know that the school did not satisfy the two-year rule. If you look at the testimony of Jay Grindy, that was the employee who Davis had hired to work with him in Retail Ready. He says in the fall of 2013, Davis wanted to start a school. This school was a new idea. Davis was struggling to find a building for this school. And then he turns around in July of 2014 and says this school has been operating continuously for 2014. That's simply not true. The other place that you can look for to prove this violation of the two-year rule is Davis's incorporation documents. So we had someone from the Secretary of State's office come and testify. Retail Ready wasn't formed as a corporation until May of 2013, just 14 or 15 months before he applies saying that he had satisfied the two-year rule. And then Davis, in his application to the TBC, he submits a second set of false financials. So he tells the TBC that in February of 2014, his school had generated $225,000 in general consulting and $85,000 in training courses. I don't know where the evidence in the record to support those numbers were, but our theory was that they were false, and that's exactly what the jury found. Because in his journal, he's talking about still trying to find a school – or excuse me, find a building for Retail Ready. So there was no school. Now – How did the journal get presented? The journal came through a foundational witness, and so I think – my understanding is it was found on his computer during the execution of a search warrant. And then we had a witness from the government just – that's how the journal was introduced and sections were read. So you got it through a motion to produce? Oh, I believe we seized the computer and the search warrant, but I think that's right. If I'm wrong, I'll correct that. I'm just curious. Oh, yes, ma'am. What about the cars and the value of the cars that he purchased in the home? Shouldn't those values be offset against the forfeiture? That's an excellent question. You seized them, right? Yes, yes. I think they already have been. So the way I understand it is the total amount of forfeiture was $72 million, and then because we have the cars, all of those proceeds will be applied against those values. So it's not like $72 million plus a Lamborghini plus a Ferrari. I think it's $72 million minus whatever we get for the Lamborghini minus the Ferrari minus the Bentley. Does that make sense? Yeah. So that's in the record. Yes, ma'am. I believe in the forfeiture proceeding, that section of the record. Okay. So why this two-year rule is so important. Several witnesses testified, including B.B. Glasgow and Dr. Dworkowski, that a school is categorically ineligible. Those are my words, but cannot get approval unless they first satisfy this two-year rule. The two-year rule is codified in statute, and it is a nonstarter. It is an absolute prerequisite that you satisfy the two-year rule. So if Davis doesn't satisfy the two-year rule, then the victim in this case is the VA, and the VA gets no benefit of their bargain. So I want to move to loss amount. He argues that he gets an offset for legitimate services provided. And our argument is there was no legitimate services provided to the VA. The VA would not have gotten into business with Retail Ready Career Center had it not lied about satisfying the two-year rule. And this court's recent decision in Croft, unpublished, is really, really instructive here, because it basically says the VA contracts for one type of school, and it gets a different type of school, and the loss to the VA is the full amount. And that's exactly what we have here. I want to move briefly. Oh, go ahead. Does that mean – I'm trying to think of a reading of subsection 2A and section 981A that doesn't read unlawful activities so broadly that it eliminates subpart B, because that can't be right. Sure. So how can we agree with you on this point and yet keep some kind of application for, in a wire fraud case, for lawful services that are sold or provided in an illegal manner? Sure. I think what the court needs to look at is what the defendant is charged with and what the conduct involves. So here he was not charged with running a school illegally. He was charged with defrauding the VA to get this school off the ground. Judge Starr did a really nice, careful, written, thorough order on this exact point. It's at ROA 2971. I would direct the court to that. And in that, Judge Starr cites United States v. George, which is a First Circuit case. It was one that the government relied on below, and I think it's probably our best authority here, because what George and George, the defendant was arguing that he provided busing services, a legitimate service. He was just turning around and embezzling that money. And the court said you weren't charged with the busing services. You were charged with the embezzlement. The criminal conduct was the embezzlement, and that's why subsection A applied in George. And I think I'm always reticent to offer hypotheticals, but one that came to me. As I was preparing for this case, if I were a CJA lawyer and I were writing briefs for the Fifth Circuit, and one out of every hundred briefs I just overbilled the court, in that case I could be convicted of wire fraud, but I would still be providing a legitimate service in an illegitimate way. And I think in that case subsection B would apply. But if I'm good will hunting and I say I'm the smartest person ever, but I've never been to law school, and I tell the Fifth Circuit, but I have been to law school, and I write hundreds and thousands of briefs, even if they're good briefs, all of that activity is inherently unlawful. There is no lawful way to mislead the Fifth Circuit in that way, and that's what we have here. I mean, is the VA getting services to the extent that the funds are being used to train? Isn't the VA still getting services for its money? The VA is not getting the services it contracted for. And I think the— Well, what did it contract for? It contracted for a school that satisfied the two-year rule that had met all of its statutory requirements exactly as Davis certified, a school that was financially capable of operating without the VA's money, which this school was not. That was the benefit of the bargain here, and what it got instead was a school that was a nascent idea that needed the VA's funding in these lies to get off the ground. So there is a world—is there a universe where the lies or the misrepresentations that factor into the wire fraud are different from these? These are sort of at the threshold, I guess. Sure. But is there a wire fraud case where the misrepresentations are, I don't know, more like your CJA I overbuilt for one brief? Right. I mean, imagine where this school satisfies the two-year requirement, is legitimately approved, but every so often there's a student who is just made up out of thin air and doesn't attend, and the VA is billed for that student. And the VA turns around and sends payment back for that student. That's a wire fraud case, but it's different than the one we have here where from the inception, the entire thing is a scheme to the fraud. Okay. And you think you're saying the First Circuit's decision in George is a strong case for your position here? That's our best case, yes, Your Honor. Okay. Thank you. You're welcome. And I do want to draw the distinction between the forfeiture that you and I have been talking about and the loss amount. So even if you found that subsection B of 18 U.S.C. 981A2 applied vis-à-vis the forfeiture, that's a different question than the losses to the VA in terms of an offset. Our best cases on offset are Mahmoud and Jones and Croft, right? Where the government isn't getting a service that it contracts for, the defendant is not entitled to an offset. Okay. Thank you. What about Mr. Ternan suggested that if there were an error, and I'm not saying there is, but if there were an error on the application of subpart B over subpart A, then that bleeds over into sentencing issues. Is that right? No. I think that's just a ‑‑ our position is that you could affirm because he failed to show his direct cost even under sub B. We've laid that out on page 70 in our brief. There are problems with Roy Cook's testimony. But even if you disagree with me there, you say B applies, we need a remand here. Yeah, which is arguendo. What if we did that? Then that is a remand for the forfeiture proceeding only. It doesn't affect the sentencing. So we would ask that you would ‑‑ in that case, you would affirm convictions, sentence, remand for ‑‑ The forfeiture is part of the sentence. I'm sorry. Remand the sentencing calculations and the term of imprisonment, but modify that portion of the sentence. But you're absolutely right. It's part of the sentence. You're saying they can be decoupled. Forfeiture is different than proceeds or, you know, the sentencing amount or whatever that is the other part of the sentence. Correct. Yes, Your Honor. I've covered everything I want to cover today. If the court has questions, I would be happy to answer them. Anything else? No. Thank you, counsel. Proceed with the bill. Thank you. Mr. Ternan, rebuttal. Yes. So the Code of Federal Regulations that deals with the two‑year rule is 38 CFR 21.4251. This regulation was never discussed by anyone at trial, so I don't know how the jury could figure out how to apply it. But if you look at it, you'll see that there's different rules based on change of control and educational institution being in operation. Mr. Dr. Derwowski testified that the two‑year rule, you look at the institution, whether the institution exists. You don't look at whether the specific course that you're asking for VA funding for exists for two years, right? And he testified to that on ROA 2893822 and then through the next page as well. No one testified that the school was categorically ineligible. No one testified to that. There's no evidence of that. In fact, the evidence is the opposite, right? Could this school have been approved absent the problems in the 2014 application? Yes. How do we know that? Because it was approved 2015, 2016, and 2017, right? The government acts as if, and it's assumed in their briefing, that this school was ineligible without any evidence. And, in fact, evidence to the contrary because it was eligible because it was approved repeatedly. The loss calculation isn't based on 981, right? The loss calculation and the sentencing guidelines is based on the guidelines, right? The application note 3 sets forth how you figure out the loss, right? They cite cases like Mahmoud and Jones. These are healthcare fraud cases, right? There's a special rule that applies in healthcare fraud cases and for good reason because in a healthcare fraud case, any surgery the government is being charged for, if it didn't need to happen, that's an isolated incident of fraud, right? Here, the government had a fixed amount that they owed at the very beginning, before the student even showed up at retail ready, right? It's calculated by statute in Title 38 dealing with veterans' benefits. Most of these folks are post-911, so it's Chapter 33. There's a statutory amount that the government was ever going to have to pay for these particular veterans, right? It was going to have to pay that regardless of what school they went to, right? So unlike the healthcare fraud where each individual payment somehow increases the amount the government owes, nothing retail ready did changed what the VA was going to have to pay, right? That was already set. The sentencing guidelines say don't look at the defendant's gain, right? That's what they say. Don't do that. You look at the victim's loss. What is the VA out as a result of the criminal conduct? And they're out nothing, right? They already had an obligation to pay these benefits. They paid them. Their duty and their obligation to the veterans has been discharged. The government didn't argue. The probation officer didn't find. The district court didn't find. There's no evidence that the students were victims. They got the training that they contracted to get, right? They got the training that had the highest graduation rate, the highest job placement rate of any school in Texas. So for the loss calculation, there isn't one. And even if the VA was somehow out something, some sort of credit, according to the sentencing guideline, should have been applied for the services and the market value of the services rendered. And we presented evidence. The government has the burden of tackling the credit issue. They didn't present anything. We presented evidence of what other schools were charging for this service. We presented evidence of what Mr. Davis was charging before he received the VA benefits for the same services. And there were students that paid their time to this school, right? So you can't say without any evidence. I mean, the sentencing guidelines say you need evidence, right, to sentence someone and say that there's a loss. You can't just say, oh, the value is zero, right? I mean, they got room and board for six weeks at this school, right? The value of that is not zero, right? They got all their meals. They got their housing. Even if they got no education, they got something. The restitution is the same thing, right? You've got tons of cases talking about how the government can't get a windfall. It can't end up ahead. And essentially what the government is trying to do here is shift the burden of paying for veterans' education from itself to the school owners, right, by saying, oh, you got something wrong in your initial application. Well, now suddenly you owe all the money that was spent on all of these students' education. That's a windfall, right? That's not justice, and that's not what the statute allows. And I want to go back to the very beginning. This man has been convicted of wire fraud in 2016 and 2017 with literally no one testifying in 2015, 2016, and 2017 that he had any intent to defraud anyone.  Thank you.